Case number 19-5321, Owner-Operator, Independent Drivers Association, Inc., et al., Abalance v. United States Department of Transportation, et al. Mr. Stinson for the Abalance, Ms. Lopez for the Employees. Good morning, Mr. Stinson. We'll hear from you. Good morning. May it please the Court. My name is Charles Stinson, and I represent plaintiffs' appellants Clint Mower and Fred Weaver Jr. I'd like to reserve two minutes for rebuttal. The issue facing this Court on this appeal is a straightforward one. Can commercial truck drivers, like Mr. Mower and Mr. Weaver, hold FMCSA and the other defendants accountable under the Fair Credit Reporting Act when the defendants distribute inaccurate and damaging personal information about these drivers' potential employers through the Pre-Employment Screening Program, or PSP? Congress has answered this question in at least two ways. Congress specifically intended that FMCSA's driver reporting under the PSP be held to account under the FCRA, and Congress generally intended that federal agencies, when they do the type of reporting covered by the Fair Credit Reporting Act, be subject to that statute, as is the case in PSP. Can I just be clear on the claim that is before us, the claim that is brought under the Fair Credit Reporting Act? Yes, Judge Wilkin, that is correct. So the cause of action is based on the FCRA, or the cause of action is contained, is created by the FCRA? Yes, Your Honor. And it's a cause of action for damages at this point, right? Yes, correct. In the previous appeal, the other equitable injunctive declaratory relief or removal case. So why isn't the first question we have to determine whether, because it's a subject matter jurisdictional question, whether Congress waived sovereign immunity under the FCRA for damages claims? Why isn't that the first thing we have to do? Right, Your Honor. Well, the district court did not address the defendant's immunity on this appeal, although in the first proceeding, the district court did note that under the FCRA, the Congress waived the defendant's sovereign immunity, and it followed the 730th decision in Borms. It both sided the decision, and it followed the analysis in Borms. The district court on this time around decided not to address the immunity issue, although you're, of course, correct that this case could be decided on the immunity issue. And that question is... You need to win on both, right? Right. Yes. The two questions are closely related as to whether defendants qualify as FCRA persons and FCRA consumer reporting agencies. The current version of the statute imposes liability on any persons who violate the statute. The pre-1996 version of the statute imposed liability on consumer reporting agencies who violated the statute. But as the definition of consumer reporting agencies is key to the definition of person, really the definition of person is what controls, at least what guides support in whether immunity has been waived. And in this case, as the Second Circuit found in Borms, the language that Congress used is clear. Section 1590... 15 U.S.C., section 1691A, subsection B, includes government and government entities in its definition of persons, and it includes no reservation on the federal government or otherwise limits the statute to our definition to state and local governments. Is the federal government a person as that word is used in the sections subjecting persons to criminal liability? I think that is an argument the defendants made. It's an argument relied upon in the Ninth Circuit in Daniel that would lead to that result. But I think that if you read that statute in context, it's 1691Q, I believe, that imposes criminal liability for persons who obtain consumer reports under false pretenses, and that's a very limited criminal liability section. And it's unclear that the federal government and not an erstwhile agency employee could ever violate that statute. And so whether that criminal liability... I don't think stops the government from being a person in the other provisions of the statute. So, sorry, was that a yes or a no? I don't believe that the federal government or any government would be a person under that provision of the statute. Employee could be. So if that's true, don't we need more reasoning on the sovereign immunity waiver than just the syllogism? Here's the definition of person. It covers the federal government. Persons are exposed to civil damages liability, QED. Yes, Judge Cassis. I think if you look at... Not only is person defined to include governments, but the PSP statute itself, 49 U.S.C. 31150, which incorporate... If there's any ambiguity in the definition of person in 1691A, subsection B, then the PSP statute, which subjects defendant's PSP reporting to the FCRA, if you read the two statutes together, then it's clear that Congress intended that when the federal government does specific type of consumer reporting covered by the statute, then it is a person that's liable under the statute and subject to the statute's strictures and other procedures. But can't Congress say that the government should comply with certain procedures that we're not going to waive sovereign immunity so that you can sue the government for damages if they don't comply with the statute? You might be able to get injunctive or declaratory relief pursuant to the waiver of sovereign immunity in the APA, but we're not going to subject the government for damages. Can't the government... be bound by a statute? Right. Judge Wilkins, yes. I suspect that the government can do that, but the government did not do that here. In other statutes where the government has... or where Congress has defined the scope of persons potentially liable under the statute to include governments, they have withheld certain kinds of liability from the federal government. They didn't do so here. Under the Equal Credit Opportunity Act, which is another financial remedial chapter of Title 15, the government... Congress specifically reserved certain kinds of liability from the government in its liability provisions. Mr. Stenson, I want to go back to a question that you were asked by Judge Wilkins, and that is whether we have to decide sovereign immunity before we get to the merits. I think the... I don't... I don't know that you have to. I think the questions are interrelated, whether... Well, there's a case that... The law, the circuit is from In re Sealed Case in 1999, and it said... I'm going to read it to you. It just said... or hybrid status of federal sovereign immunity. We are not required to decide that issue before the merits. I'm sorry, Judge Randolph, you cut out at the beginning. I didn't hear the... Well, there's precedent in this circuit saying we don't have to decide sovereign immunity before deciding the merits. Right. And so I think... It supports your position, but you didn't cite the case. Right. I think you certainly could, but you're not required to. And as I said in this question, in this instance, the two issues are interrelated as they're both determined by the scope of consumer reporting agencies and persons under the Fair Credit Reporting Act. And I'd just like to touch briefly on the district court's... The crux of the district court's decision, which was that defendants do not assemble driver information for the purposes of including that information in reports to third parties. And the district court erred because it ignored the reality of PSP. This is a requirement for a consumer reporting agency under 1691A subsection F. In PSP, defendants extract three categories of data from their overall MCMAS motor carrier database. They extract those three categories of data and they assemble them into a report. The express and exclusive purpose of that assembly into a PSP report is to provide those reports to third parties, in this case, potential employers who are making FCRA decisions, in this case, hiring staffs. If there are no further questions, I see that I'm out of time and I'll reserve the remainder for rebuttal. All right. Thank you. We'll give you some time on rebuttal. Ms. Lopez, good morning. Good morning. May it please the court, Carolyn Lopez on behalf of the government. Here, as your honors have pointed out, for plaintiffs to prevail, they would have to show both that the agency is somehow transformed into a consumer reporting agency when it's carrying out legislative directives intended for safety purposes and that the United States has waived its sovereign immunity with respect to damages. And it can do neither. Can we decide sovereign immunity first? No, your honor. Your honor, if your honors believe, as the government argues, that the agency simply isn't a consumer reporting agency that's governed under the Fair Credit Reporting Act, the question of whether damages would apply if those provisions, in fact, applied to the government, need not be answered here today. Well, I'll check the case Judge Randolph cited later, but I thought sovereign immunity went to subject matter jurisdiction. I'll give you the citation. It's 192 Fed 3rd at page 1,000. Thanks. In any event, I'm happy to address either the consumer reporting agency language or the damages provisions first, as your honors prefer. The United States, certainly, it's a bedrock principle on waivers of sovereign immunity with respect to damages, that they have to be clear and unequivocal. There's no clear and unequivocal language in the FCRA subjecting the government to liability here. Let's talk about that. Do you agree that the definitional clause is clear and unambiguous in extending to the federal government when it says person means any individual corporation, et cetera, or government? Yes, your honor. It does include governments within, so including state governments, federal governments, foreign governments. Yes, your honor. And then it would seem to be equally clear from both text and structure. This is, those words appear in a definitional provision that is expressly said to define what that word means across the entire statute. No, your honor, for two reasons. One, based in a Supreme Court case, and one based as we were, as your honors were discussing earlier, as discussed in the Ninth Circuit's decision in Daniel and the Fourth Circuit's discussion in Robinson, based on the text of this particular statute. So, starting with that Supreme Court case, in the employee's case, which is 411 U.S. 279 at pages 282 to 285, the Supreme Court explains that, for example, and there we're talking about the Fair Labor Standards Act, where state governments were included in the definition of employer and there was a separate liability provision for employers. When there's congressional silence as to whether or not that definitional provision was intended to waive state sovereign immunity with respect to liability, Congress shouldn't find that waiver there. The same principle applies here. Is that case in your brief? I don't believe it's in the brief. I just wanted to provide sort of context as to sort of how we were analyzing this. And then... 411 U.S. at 282? Through 285, yes, your honor. Okay, I'll check that too. Just starting with text... Yes, your honor. The definition says, for the purposes of this subchapter, and this subchapter means all of FCRA, right? Your honor, I think what's helpful here is to take a step back and look at the way that the 1970 version of the statute as enacted, how all of those provisions work together. I'll let you do that in a second. But before we get to structure and drafting history, let's just talk about text. And text seems awfully clear. No, your honor, I disagree. As the Supreme Court emphasized in both Daniel and... Sorry, as the Ninth Circuit emphasized in Daniel and the Fourth Circuit emphasized in your text, to mean both state and federal governments across everything, it would lead to absurd results. And so that's both the criminal provision that your honor raised earlier, but also it's actually, if one were to look at this consumer reporting agency provision in the original text, if by the mere inclusion of governments and persons, states, for example, could be included in consumer reporting agencies, that itself would be unconstitutional because it was enacted under the Commerce Clause and private suits for damages cannot be enacted against the states pursuant to Congress's Commerce Clause powers. Is that because of the 11th Amendment? Is that because of the 11th Amendment? Yes, your honor. And so that's a seminal tribe decision. So the abrogation is unconstitutional as applied to states. So what? The statute covers states and it's unconstitutional as applied. It's yet another reason, along with the fact that the criminal, the application of the criminal statute. The criminal one, that's a good point in your favor. But I mean, it's really an argument that, to me anyway, it sounds like an argument that absurd consequences trump text. No, your honor. And I think if I might, with your indulgence, just talk about how it made sense for Congress to include persons and why it would have done so in the original text without actually imposing liability. And again, you know, there has to be, it has to be clear and unequivocal. If there's a plausible reading of the statute that doesn't impose liability, then liability should not be imposed. And here, if one looks at the original statute altogether, so that's at 84 stat 1127, there are a number of provisions. So for example, section 607 and section 604 that regulate consumer reporting agencies and the permissible uses for which they can provide information to persons. And there, it's quite clear that they still have to follow those rules when the person to whom they are disclosing includes governmental agencies. So for example, 604D applies to when governments are making beneficiary decisions. It's only a government that would do that. And that's underscored by the original section 608, which creates a limited carve out for additional disclosures to federal agencies by those consumer reporting agencies in certain circumstances. And so it made sense for Congress. There's certainly a plausible reading of the 1970 Act that doesn't just depend on the absurd results for why it would have been included in the definitional section for those provisions. I would also like to just talk about why the agency doesn't come within the definition of a consumer reporting agency in the first place if there aren't further questions on the damages at this time. As the district court correctly concluded, when Congress mandated that the agency give motor carriers electronic access to previously assembled driver safety reports from the agency's central database as an alternative to FOIA requests and to promote the public safety, Congress did not implicitly transform that federal agency into consumer reporting agencies for purposes of the Fair Credit Reporting Act. And I think here it's really important to understand how this all works together. And this is something that the district court went through. So it happened in a series of sort of congressional enactments. First, Congress mandated that the agency collect and compile driver safety information from crashes and inspections at the roadside and that it do so for a variety of safety purposes, including rulemaking and enforcement actions. And at that time, motor carriers were able to get that information through FOIA requests with driver consent. Subsequently, Congress said at Section 31150A and C that the agency was to provide electronic access to the reports from that same central database. So no new assembly. It has to be an exact match or snapshot as the district court recognized. And the purpose there, too, was to promote safety. And that's, in fact, borne out as the agency has emphasized with employers who are regularly using these reports seeing a decrease in crashes of 8% and a decrease in driver out-of-service orders, which only apply where the driver either... But it seems to me that B1 says that the agency is to ensure that any information that is released to such person will be in accordance with the Fair Credit Reporting Act. You don't get much more explicit than that. What does will be in accordance with the Fair Credit Reporting Act mean? Absolutely, Your Honor. So two points there. First, it actually underscores that the agency, by the terms of the Fair Credit Reporting Act itself, which is the cause of action sought here, is not already directly regulated as a consumer reporting agency under that statute because otherwise that would just be surplusage. Second, when read in context with the rest of Section 31150B, which can be found at addendum page one, what it actually appears to be referring to is not any new... with respect to damages. There's no mention of damages there at all. But rather, when you read the language together with the other parts of that provision, so B2 instructs the agency to ensure that the program requires driver consent before instructs the agency to create a procedure for correction. What it's doing is making sure that when a motor carrier either collects information... It didn't need to say will be in accordance with the Fair Credit Reporting Act. They could have just said, make sure that you get consent and that you have a correction procedure as part of this program. They didn't need to say will be in accordance with the Fair Credit Reporting Act if that's all they intended to do. Yes, Your Honor. I think actually it's one thing that's helpful to note here is that there are parallel provisions in the Fair Credit Reporting Act that specifically apply to motor carrier employers and what they have to do when they get similar information directly from a consumer reporting agency instead of from the agency. And so those can be found at 15 USC 1681B, parens B, parens 2, and parens 3. And those regulations... I don't remember seeing it. No, Your Honor. It's not in your brief. But in response to your question, what we did say in our brief is that what that was intended to do is to really enforce, is to really ensure that the agency was operating in parallel to the spirit of the FCRA and the Privacy Act and particularly concerned with consent as emphasized in the conference report at 109-203 page 991. May I interrupt you before you run out of time? You're saying that DOT is not a consumer reporting agency. You don't mean to agree, do you, that these commercial accident and inspection reports are consumer reports? No. No, Your Honor. They're not. Consumer reports are issued, definitely are provided by consumer reporting agencies. And so that's why what Congress instructs the agency to do is to create parallel provisions requiring driver consent and giving them the authority to set up their own procedure. If they were already regulated as consumer reporting agencies because they were providing consumer reports, then there would be no need to instruct the agency to create its own procedure because the FCRA contains a comprehensive procedure for corrections. And so it's really reading all of those things in harmony that gives meaning to every provision of Section 31150B read together and aligns with Congress's purpose in enacting this statute. And I did just want to emphasize that, you know, every court, there's good reason that every court and the FTC in the 50 years since the FCRA has been enacted has rejected attempts to make federal agencies or state agencies acting pursuant to legislative safety directives into consumer reporting agencies under the FCRA. I say I've gone well over my time. If there are no further questions, we respectfully ask that the court affirm. Any further questions? Judge Katz? Judge Randolph? No. All right. Mr. Stinson, we'll give you two minutes for rebuttal. I'm listening. I just have to step away for a second. Thank you, Your Honor. I just have a couple of brief points to address Judge Randolph's question there towards the end. These PSP reports certainly could be consumer reports. They're personal information that's distributed for the purposes of making a hiring decision, which is a decision covered by the FCRA. So they could be consumer reports. Secondly, I want to say that while the cases that defense counsel refers to have not found that the federal government is a consumer reporting agency, those cases do not involve an instance where Congress specifically directed an agency to do consumer reporting. Here, Congress directed FMCSA to do the consumer reporting covered by the statute, and FMCSA did that. They created a system whereby driver information is assembled into a single report that is for individual employers who are making hiring decisions. What does an accident report have to do with credit worthiness or credit standing or financial wherewithal? Judge Randolph, nothing, but the FCRA is not limited to those purposes. What about an inspection? What does that got to do with it? I mean, one of your clients had, there was some kind of latch that had too much play in it. That didn't have anything to do with whether he was worthy of the extension of credit, did it? Yes, Judge Randolph, of course, that's correct. But the FCRA applies to information regarding a person's character, their mode of living, and is that- Yeah, the character, it all relates back to credit worthiness. I mean, you could say that you don't want to extend credit to somebody that has been convicted of 10 felonies over their life. Right, Your Honor. But the Fair Credit Reporting Act, its definition of consumer report expands well beyond what would be considered traditional credit reporting to include information used in making employment decisions, and that is specifically what PSP reports are by design. Section 31150 subsection C expressly provides that these are reports to be used to make hiring decisions and only- You don't want to hire, you know, an employer would not want to hire a deadbeat, right? I mean, that's what that means. I think there has not been a dispute in this case that the type of information that's covered by consumer reporting agencies notwithstanding- Excuse me. Covered by the definition of consumer reports notwithstanding defendant's argument that they're not consumer reporting agencies, so therefore they can't produce consumer reports. But Congress here, we're not asking to hold the entire federal government accountable under the FCRA for every record-keeping decision it makes, which is what is addressed by the cases cited by defendants. What we're asking here is for the- to hold the FMCSA accountable when it is, by design, doing consumer reporting from a directive from Congress. Thank you, Your Honor. All right. Thank you, counsel. Thank you, counsel. We'll take the matter under advisement.
judges: Wilkins, Katsas, Randolph